UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARSHALL T. MORIARTY,                )
individually and on behalf of        )
all others similarly situated,       )
                     Plaintiff   )
                                  )
                                  )
               v.                      )   Civil Action No. 13-30157-KPN
                                  )
                                  )
CAROLYN W. COLVIN,                   )
Commissioner of Social Security,     )
                     Defendant   )

MEMORANDUM AND ORDER WITH REGARD TO
CROSS-MOTIONS FOR SUMMARY JUDGMENT
(Document Nos. 17 and 20)
December 31, 2014

NEIMAN, U.S.M.J.

      Marshall T. Moriarty ("Plaintiff") brings this action asserting that, as an attorney who represented a successful benefits claimant, he is entitled to an additional attorney's fee by way of mandamus relief pursuant to 28 U.S.C. §§ 1331 and 1361. In short, Plaintiff maintains that since June 1, 2012, the defendant Commissioner of the Social Security Administration ("Commissioner") does not -- but is required to -- include the Massachusetts state supplement when calculating attorneys' fees in Supplemental Security Income ("SSI") benefits cases. As might be expected, the Commissioner disagrees. The parties, however, have agreed to consent to the jurisdiction of this court. See 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

      Presently, the parties cross-move for summary judgment, with Plaintiff arguing that the statute is unambiguous and should be resolved in his favor, while the

Commissioner contends that the court ought to defer to her interpretation of the governing statute. For the following reasons, the court will allow the Commissioner's motion and, in doing so, deny Plaintiff's motion for summary judgment.

I. BACKGROUND

A. State Benefits Under The SSI Program

The Social Security Administration ("SSA") administers two comprehensive disability programs: SSI and Social Security Disability Insurance ("SSDI"). The SSDI program arose out of the 1935 Social Security Act and provides benefits to insured disabled individuals regardless of financial need. *See* 42 U.S.C. §§ 403, 423. The SSI program, in contrast, came into effect in 1974, heralding the first occasion on which the federal government administered disability benefits to uninsured needy individuals by combining a patchwork of programs which had been administered on the state level and jointly funded by the state and federal government, *viz.*, Old-Age Assistance, Aid to the Blind, and Aid to the Permanently and Totally Disabled. *See Constance v. Secretary of Health and Human Servs.*, 672 F.2d 990, 991 (1st Cir. 1982) (discussing background of SSI program).

Since the states' treatment of these adult categories of welfare benefits had not been uniform, Congress provided a mechanism within the SSI amendments which permitted states to supplement the federal benefit as they saw fit to "reflect the varying costs of living." *Bouchard v. Secretary of Health and Human Servs.*, 583 F.Supp. 944, 947 (D. Mass. 1984). Many states have taken advantage of this so-called optional state

supplementation, although others have been satisfied with the federal benefit alone.[1]
*See* Sue C. Hawkins, "SSI: Characteristics of Persons Receiving Federally Administered State Supplementation Only," 46 Soc. Sec. Bul. 4, 3 (April 1983).

Congress also preferred that states agree to the federal administration of their supplemental benefits, reasoning that to do so would "avoid unnecessary duplication of administrative costs, would permit the states to take advantage of improved methods and procedures . . . and would tend to foster national uniformity in the operation of assistance programs." *Bouchard*, 583 F.Supp. at 947 (quoting H.R. Rep. No. 92-231, 92d Cong. 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4989, 5185). To that end, Congress offered states the option of low-cost administration of state benefits in exchange for a state's agreement that its supplement would be "subject to any rules, regulations and provisions which the Secretary found necessary to achieve the efficient and effective administration of both programs." *Id.* at 947 (citing 42 U.S.C § 1382e(b)(2)); *see also* H.R. Rep. 92-231, at 5187 ("By entering into agreements of their supplemental payments, States will be losing all administrative control over the operation of those benefits.").

States that administer their own supplements, in contrast, need only comply with 42 U.S.C. § 1382e(e), which requires them to (1) enforce standards in nursing and group homes where a significant number of SSI recipients reside; (2) provide such information to the public on a yearly basis; (3) certify compliance with these

---

[1] Optional state supplementation is to be distinguished from mandatory state supplementation, which is a requirement in the SSI program that states ensure their residents' disability benefits never fall below their pre-SSI watermark, if any. *See Bouchard*, 583 F.Supp. at 947 n.4.

requirements with the Commissioner; and (4) reduce supplementary payments to institutions that do not meet the standards. *See also* 20 C.F.R. § 416.2005(c) ("If the State chooses to administer such payment itself, it may establish its own criteria for determining eligibility requirements as well as the amounts."). Again, some states initially opted for federal administration, while others chose to administer their own benefits, if any. *See* Hawkins at 4. In April of 2012, Massachusetts, which had previously opted to have its state supplements federally administered, switched those supplements to state administration. As will be seen, that switch came in the midst of the retroactive award period for Plaintiff's client.

### B. Attorneys' Fees Under the SSI Program

As initially enacted in 1974, the SSI program did not provide for the direct payment of fees to attorneys who successfully represented claimants. *See Bowen v. Galbreath*, 485 U.S. 74, 79 (1988); H.R. 92-231 (1971) (withholding fees from past-due benefits due claimants "would be contrary to the purpose of the program"). In contrast, the SSDI program had authorized attorney fee withholding as of 1965 for successful court adjudications and, as of 1968, for successful administrative appeals. *See* Pub.L. No. 89-97, § 332, 79 Stat. 286, 403 (1965); P.L. 90-248, § 173, 81 Stat. 821, 877 (1967). This administrative withholding was facilitated by an amendment to 42 U.S.C. § 406 (a) which required the Commissioner to fix a twenty-five percent fee (subject to a cap) and to certify that amount for payment out of retroactive benefits otherwise due a prevailing claimant.

Although Congress initially incorporated "almost every other provision of § 406" into the SSI program, it left out the provisions which authorized "judicial withholding and

administrative withholding." *Bowen*, 485 U.S. at 77. "The Secretary could set maximum fees for representation before the agency, but there was no provision for payment directly to the attorney." *Reid v. Heckler*, 735 F.2d 757, 761 (3rd Cir. 1984), *abrogated on other grounds by Bowen v. Galbreath*, 485 U.S. 74 (1988).

These policies remained in effect until 2004 when Congress authorized fee withholding and direct payment to prevailing attorneys in SSI cases as well. *See* Social Security Protection Act of 2004, Pub. L. No. 108-203 § 302, 118 Stat. 494, 519-21 ("SSPA") (made permanent in the Social Security Disability Applicants' Access to Professional Representation Act of 2010, Pub. L. No. 111-142, 124 Stat. 38-40). In pertinent part, the SSPA incorporated the remaining provisions of section 406 into the SSI program and, in addition, inserted a new subparagraph B into 42 U.S.C. § 1383 (d)(2)(B), which provided that the Commissioner "shall pay [in essence, 25 percent] out of such past-due benefits to [a prevailing] attorney." P.L. 108-203, § 302, 118 Stat. 494, 520. The purpose of the SSPA, in effect, was to incentivize attorneys by way of direct payment rather than provide them the maximum amount of fees. *See* H.R. Rep. 108-46, 108th Cong., 1st Sess., at 43 (2003) (purpose of attorney fee withholding change in the SSPA is to guarantee payment so that "more attorneys would be willing to represent claimants"); *Detson v. Schweiker*, 788 F.2d 372, 376 (6th Cir. 1986) ("[T]he primary financial incentive provided by [42 U.S.C.] § 406 is not the *amount* of attorney's fees but is the *direct payment* of fees . . . . [T]his financial incentive is unaffected by the Secretary's method of calculating the withholding amount.") (citing *Burnett v. Heckler*, 756 F.2d 621, 626 (8th Cir. 1985)).

When making these changes, Congress did not specify whether and to what

5

extent state supplements were to be included as "past-due benefits." The Commissioner, however, has interpreted "past-due benefits" to "includ[e] any Federally administered State payments" but to exclude state-administered payments. 20 C.F.R. § 416.1503; see also Program Operations Manual System ("POMS") GN 03920.031(B)(1), 2005 WL 724563 (July 17, 2012) (past-due benefits include "the total amount of Federal and Federally administered State payments"). Consequently, in claims arising in supplementing states, the SSA pays prevailing attorneys more of the total SSI retroactive award when it administers the state supplement than it pays when the state itself administers that supplement. For example, if a claimant's retroactive SSI award of $20,000 was comprised of $18,000 in federal funds and $2,000 in state supplemental funds, counsel for the claimant would be due $5,000 (25% of the total) if the state supplement was administered federally, but only $4,500 if the state supplement was administered by the state; that $4,500 would represent 25% of the federally administered $18,000 only, even though the claimant would also be receiving $2,000 in retroactive state supplements. That difference is the nub of the issue presently before the court.

### C.  Facts of this Case

On May 6, 2013, Plaintiff, an attorney who had represented Fernando Cantres ("Cantres") in a partially favorable SSI adjudication, received a fee award of $4,079.26, which amount was twenty-five percent of Cantres's past-due federal and federally-administered state supplemental benefits (less an administrative charge unrelated to the legal issues at hand). (Complaint at ¶ 15-20.) The $4,029.26, however, did not include twenty-five percent of the state supplemental benefits that accrued after Massachusetts

switched to state administration. (See Doc. No. 21, Memorandum of Law in Support of Petitioner's Cross Motion for Summary Judgment at Addendum "D" ("Memorandum in Support").) On May 20, 2013, Plaintiff wrote to the SSA's attorney fee branch, arguing that the fee should have included an additional $324.85, *i.e.*, twenty-five percent of Cantres's retroactive $1,299.40 state-administered state supplement. (Id. ¶ 21, 22.) Although Plaintiff alleges that the attorney fee branch did not itself take definitive action in response, Plaintiff did receive an email from the SSA Office of the Regional Counsel stating that "past-due benefits are calculated only [on] the basis of federally administered benefits and do not include state supplementation unless federally administered." (Id. ¶ 23.) This position is consistent with the Commissioner's regulation defining "past-due benefits," promulgated in 2007, which provides in pertinent part as follows:

> Past-due benefits means the total amount of payments under title XVI of the Act, the Supplemental Security Income (SSI) program, including any Federally administered State payments, that has accumulated to you and your spouse because of a favorable administrative or judicial determination or decision.

20 C.F.R. § 416.1503.

## II. DISCUSSION

The Commissioner argues that her regulatory interpretation of the governing statute is neither implausible nor plainly erroneous and, accordingly, that Plaintiff's mandamus claim should fail. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-843 (1984) ("*Chevron*"). Plaintiff responds that the Commissioner's definition of "past-due benefits" is arbitrary and capricious, that his own interpretation should win the day, and that the court can therefore enforce his claim for

7

relief.

At the outset, Plaintiff's argument has some appeal. The Commissioner is statutorily required to pay twenty-five percent of "past-due" SSI benefits to counsel representing a prevailing claimant. 42 U.S.C. §§ 406(a)(4) and 1383(d)(2)(B). And, as the Plaintiff argues, it would seem that the corpus of benefits to which these provisions refer, *i.e.*, all past-due benefits payable "under this subchapter," unambiguously refers to any benefits arising under Title XVI, the SSI program. *Id.*; *see also Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion."). But a closer look reveals that beneath the veneer of this argument lie crucial ambiguities that compel the court to agree with the Commissioner's interpretation of the statutory scheme.

The term "past-due benefits" is not ambiguous separate and apart from the statute; in fact, its meaning appears to be readily apprehended. The difficulty is that Congress has not "directly spoken to the precise question" of whether state-administered state supplemental benefits are to be included in the umbrella of "past-due benefits." *See Chevron*, 457 U.S. at 842-43. This is not a particularly novel situation: many courts, including the First Circuit, had previously determined that the phrase "past-due benefits" was ambiguous with respect to "interim benefits," which, like state supplemental benefits, appeared to fall under the mantle of Title XVI. *See Rodriguez*, 856 F.2d at 341; *Akers v. Secretary of Health and Human Servs.*, 966 F.2d 205, 206

(6th Cir. 1992).² Accordingly, the court has little choice but to conclude that Congress's intent with respect to the definition of "past-due benefits" in the present context is similarly unclear.³

That being so, an agency's "permissible" interpretation of an ambiguous statute is entitled to deference. *Chevron*, 467 U.S. at 843-44. Indeed, when Congress "explicitly [leaves] a gap for an agency to fill," agency interpretations are afforded "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id*. In such instances, a court needs to determine whether the interpretation would "frustrate [a] fundamental purpose" of the statute, *see United States v. Morton*, 467 U.S. 822, 834 (1984), rather than merely being an "unwise or burdensome" interpretation, *see American Telephone & Telegraph Co. v. United States*, 299 U.S. 232, 236 (1936), and whether the regulation is a "reasonable exercise[] of the delegated power." *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981). *See Chevron*, 467 U.S. at 843.

Here, the court concludes, the Commissioner's interpretation is both permissible and reasonable. Granted, as Plaintiff argues, there is some allure, as a matter of

---

²Interim benefits, for purposes of those cases, are continued payments of disability benefits pending an appeal of an adverse decision, provided for under 42 U.S.C. § 423(g), which have been considered by some courts to be akin to a "loan" by the SSA because the claimant generally must repay the benefits if the decision is affirmed. *See, e.g., Akers*, 966 F.2d at 206. These are now more commonly referred to as "continuing benefits." *See* POMS-GN 03920.031(B)(1), 2005 WL 724563 (July 17, 2012).

³This lack of clarity is echoed in a parallel and adjacent provision, section 1382e, in which Congress stipulated that federally-administered state supplements are subject to procedural and administrative provisions but was silent with respect to state-administered supplemental benefits. 42 U.S.C. § 1382e(b)(2).

equity, to awarding attorneys twenty-five percent of the state supplement regardless of which level of government might administer it. Nonetheless, there are countervailing factors at play.

First, as a practical matter, the SSA is unaware of the amount of the state-administered supplement to be retroactively awarded a claimant. This lack of awareness, in fact, is reflected in the award letter the SSA sent to Cantres, which letter was quite specific when calculating the amount of the retroactive federal benefit, as well as the federally-administered state benefit (for that part of the retroactive period leading up to the switch to state administration), but totally silent with regard to the amount of any state-administered state supplement which might be due. (*See* Doc. No. 21, Addendum C.)

Second, even if the SSA were aware of the amount of the state-administered supplement (or made aware in a timely manner), it would have no power to withhold 25% of the total retroactive amount payable to the claimant. Quite to the contrary, it would actually run afoul of the state's right to control its own supplemental benefits once it opts for self-administration. *Compare* 20 C.F.R. § 416.2005(c) ("If the State chooses to administer such payment itself, it may establish its own criteria for determining eligibility requirements as well as the amounts."), *with* H.R. Rep. 92-231, at 5187 (1971) ("By entering into agreements of their supplemental payments, States will be losing all administrative control over the operation of those benefits.").

Third, to make Plaintiff's interpretation of the statute work, *i.e.*, requiring the SSA to withhold 25% of retroactive state-administered supplements for the benefit of the claimant's attorney, the Commissioner would need to confer more duties on non-

10

participating supplementing states than those established by Congress in section 1382e, which to this court would appear to be *ultra vires*. *See Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 174 (1986) ("[A]n agency literally has no power to act, let alone pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it."). More to the point, perhaps, "[i]t is beyond cavil . . . that, short of constitutional constraints, a court [itself] may not impose procedural requirements in administrative cases above and beyond those mandated by statute." *Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 349 (1st Cir. 2004).

One final point with regard to a state's choice to administer its own supplement: the federal administration of millions of SSI accounts may not be as inexpensive to the states as originally designed. The SSA charges federally administered states an administrative fee of more than ten dollars per payment but does not charge the fee to states that administer their supplements themselves. 20 C.F.R. § 416.2010(b). This may well be the reason that Massachusetts has withdrawn from its agreement to have the SSA administer its state supplement, preferring to perform its own accounting at its own cost.

In sum, the court finds (1) that the reference in section 1382(d)(2)(B) to "past-due benefits under this subchapter" is ambiguous with respect to state-administered state supplemental benefits and (2) that the SSA's regulatory interpretation of the statute was a permissible exercise of delegated power under *Chevron*. *See also Rodriguez v. Secretary of Health and Human Servs.*, 856 F.2d 338, 341 (1st Cir. 1988) (Commissioner's regulations "governing maximum [attorneys] fees" in SSI benefits cases are "made pursuant to an explicit statutory delegation" and are accordingly given

"legislative force").

Even if the court were to find, for one reason or another, that the Commissioner's interpretation fails the *Chevron* analysis, it would still agree with her interpretation so as to avoid absurd results. *See Boivin v. Black*, 225 F.3d 36, 41 (1st Cir. 2000) ("The plain-meaning doctrine is not a categorical imperative[] and . . . the unambiguous text of a statute may yield if its application tends to produce absurd results."). There is simply no way to force the Commissioner to pay twenty-five percent of the full retroactive SSI benefit because, as described, the SSA does not have access to the state supplemental amount and, more importantly, Congress appears to have provided no mechanism for the SSA to gain access to that information. Granted, as Plaintiff argues, the SSA maintains extensive contact with state governments and is often called upon to provide offsets and reimbursements upon receiving state benefit information, *see, e.g.,* 42 U.S.C. 1383(g) (interim assistance reimbursement), but those communications are mandated by Congress, which has power over the several states, and not the Commissioner, who does not. *See Citizens Awareness Network, Inc.*, 391 F.3d at 349.

That said, the court is troubled by another aspect of the very same letter which awarded retroactive benefits to Cantres, namely, the statement that his attorney could "charge [him] no more than" twenty-five percent of the sum of only the federal and federally-administered state benefits for work on the SSI claim. (*See* Doc. No. 21, Addendum C). Thus, the very same SSA which professes to have no control, let alone knowledge, of the state-administered supplements went ahead and exercised such control, putting those benefits out of the reach of counsel (despite any agreement to the contrary between counsel and the claimant). Indeed, the implication of the SSA's

12

directive in its letter to Cantres is that the state itself could not facilitate the payment to counsel of 25% of the retroactive state-administered supplements even if it wanted to.

When asked at oral argument to address these concerns in post-argument filings, the Commissioner held to the position that a claimant's attorney would be unable to enforce his contract with the claimant for twenty-five percent of past-due benefits with respect to the state-administered supplemental portion of the retroactive award. The reason: "It would . . . constitute a fee violation if an attorney and a claimant agreed to allocate part of the state-administered supplement to the attorney as a fee if the fee would result in a total fee in [excess] of what was authorized by the Commissioner." (*See* Doc. No. 25, Commissioner's Response to Court Order Regarding Attorneys' Fees and a State-Administered State Supplement). The Commissioner also indicated that "[a]n allocation by the state of part of a state-administrated state supplement to an attorney as a supplemental fee would constitute a fee violation under the Social Security Act and agency regulations if such allocation would result in a total fee in access [*sic*] of the fee authorized by the Commissioner." (Id.)

In the court's view, the Commissioner's position makes little sense. First, throughout this litigation, the Commissioner has touted her *in*ability to withhold money from state-administered supplemental payments on behalf of attorneys but insists, without citing any particular statutory or regulatory provision in support, that attorneys are powerless to collect the remaining portion of the fee on their own and that states, too, cannot themselves arrange for such payment. Second, the Commissioner has no problem including 25% of state supplements in an attorney's fee award when those supplements are administered federally but, somehow, believes that states on their own

13

are powerless to facilitate the same result.

Unfortunately for Plaintiff, these alternative methods of having his full fee paid -- either directly by his client or by the state itself -- are not issues the court can address in the context of the instant lawsuit. First, neither Cantres nor the Commonwealth of Massachusetts is a party to this dispute. Second, given the fact that Plaintiff has neither attempted to arrange further payment of his fee by his client or the state, there is no actual controversy regarding the legality of collecting the fee by other means. Third, in a way, this issue may be a variant on Plaintiff's "contract clause" claim, but that claim has not been developed. Accordingly, it will remain to be seen whether, under different circumstances, this particular aspect of the SSA's attorneys' fees policy could withstand a challenge, if not a *Chevron* analysis.

With regard to the narrow issue before the court, however, it is clear that the Commissioner reasonably interpreted "past-due benefits" as inapplicable to state-administered state supplemental benefits, and, accordingly, that Plaintiff's mandamus action must fail.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is ALLOWED and Plaintiff's motion is DENIED.

IT IS SO ORDERED.

                                                   /s/ Kenneth P. Neiman
                                                   KENNETH P. NEIMAN
                                                   U.S. Magistrate Judge

December 31, 2014